## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **THE STATE OF NEVADA by its ATTORNEY GENERAL CATHERINE CORTEZ MASTO**<br><br>Plaintiff,<br><br>            v.<br><br>**RENOWN HEALTH**<br><br>Defendant. | Case No.: 3:12-cv-00409<br><br>**FINAL JUDGMENT** |

WHEREAS, Plaintiff State of Nevada, through its Attorney General, after initiating an investigation of the acquisition of Reno Heart Physicians by Defendant Renown Health ("Renown Health") filed a Complaint alleging violations of Section 7 of the Clayton Act, 15 U.S.C. § 18, and the Nevada Unfair Trade Practices Act, NRS 598A *et seq.*;

AND WHEREAS, Renown Health agrees that this Court has jurisdiction over it and the subject matter in this action;

AND WHEREAS, the Parties, through their attorneys, have consented to the entry of this Final Judgment ("Judgment") without trial or adjudication of any issue of fact or law and without this Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Renown Health agrees to be bound by the provisions of this Judgment pending its approval by the Court and thereafter;

AND WHEREAS, Renown Health has agreed to similar orders with the Federal Trade Commission in a Related Action (defined herein) to address the allegations set forth by Plaintiff in its Complaint;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, without any admission or finding of wrongdoing or violation of any law, and upon consent of the Parties, it is ORDERED, ADJUDGED, AND DECREED:

## JURISDICTION

1. This Court has jurisdiction over the subject matter of, and each of the Parties to, this action.  The Complaint states a claim upon which relief may be granted against Renown Health under Section 7 of the Clayton Act, 15 U.S.C. § 18, and under NRS 598A.060(1)(f), alleged in the Complaint as a pendent state claim.

2. Renown Health is a non-profit corporation organized, existing, and doing business under and by virtue of the laws of the State of Nevada with its office and principal place of business located at 1155 Mill Street, Reno, Nevada 89502.

## DEFINITIONS

As used in this Judgment, the following definitions apply:

3. "Acceptable Termination" means any termination of employment with Renown Health resulting from (1) a Termination Notification which, upon consultation between the Monitor and Plaintiff, is submitted, after the Federal Trade Commission's Decision and Order in the Related Action becomes final, to Renown Health by the Monitor, or (2) Renown Health notifying the Monitor that a Cardiologist

Employee is otherwise leaving employment with Renown Health with the intention of Participating in a Reno Cardiology Practice for a period of at least one year and the Monitor consulting with Plaintiff regarding such notice.

4. "Antitrust Compliance Program" means the program to ensure compliance with this Judgment and the Antitrust Laws, pursuant to Paragraph 53.

5. "Antitrust Laws" means the Nevada Unfair Trade Practice Act, NRS 598A *et. seq.*, the Sherman Act, 15 U.S.C. § 1 *et. seq.*, and the Clayton Act, 15 U.S.C. § 12 *et. seq.*

6. "Cardiologist Employee" means a Physician who provides Cardiology Services in the Reno/Sparks Geographic Area as an employee of Renown Health and who, prior to providing Contract Services for Renown Health, offered Cardiology Services as a Participant in SNCA or as a Participant in Reno Heart.

7. "Cardiology Services" means medical professional services in general cardiology (*e.g.*, medical management of heart and vascular conditions), invasive cardiology (*e.g.*, cardiac catheterizations), interventional cardiology (*e.g.*, angioplasty, placement of stents), and electrophysiology (*e.g.*, placement of pacemakers and defibrillators); *provided, however*, Cardiology Services does not include services provided to pediatric patients or services provided by cardiac surgeons.

8. "Contract Services" means any service performed pursuant to any Employment Agreement between Renown Health and a Cardiologist Employee.

9. "Employment Agreement" means, as applicable to the Cardiologist Employee, either an employment agreement between Renown Health and a Participant in SNCA

entered into on or around November 24, 2010, or an employment agreement between Renown Health and a Participant in Reno Heart Physicians entered into on or around March 17, 2011.

10. "Executive and Cardiology Staff" means at least the Directors on the Board of Directors for Renown Health; the Directors on the Board of Directors for the Nevada Heart Institute; the President and/or Chief Executive Officer for Renown Health and any employees that directly report to him or her or who are members of the President's Council; the Chief Financial Officer for Renown Health; the CFO Affiliates for Renown Health (or similar Person who supervises the Nevada Heart Institute and NHI-1, Inc.) and any employees that directly report to him or her or who set the policy, scope, and manner in which the Nevada Heart Institute offers Cardiology Services; the General Counsel for Renown Health; and Cardiologist Employees or other employed cardiologists for Renown Health.

11. "In-Person Training" means any educational session, seminar, or other meeting whereby individuals participate on a face-to-face basis, through a live video-conference feed, or an online interactive program as part of the Antitrust Compliance Program.

12. "Monitor" means the Person appointed to act as monitor by Plaintiff (in consultation with the Federal Trade Commission) pursuant to Paragraphs 38 to 44.

13. "Nevada Heart Institute" means Nevada Heart Institute, Inc., a non-profit corporation and an affiliate of Renown Health that uses or used any of the following trade or doing business as names: Nevada Heart Institute, Renown Institute for Heart and

Vascular Health, Reno Heart Physicians, Sierra Nevada Cardiology Associates; its directors, officers, employees, agents, representatives, successors, and assigns; and its joint ventures, subsidiaries, divisions, groups and affiliates controlled by it.

14. "NHI-1, Inc." means NHI-1, Inc., a non-profit corporation and an affiliate of Renown Health that uses or used any of the following trade or doing business as names: Nevada Heart Institute, Reno Heart Physicians, Renown Institute for Heart and Vascular Health; its directors, officers, employees, agents, representatives, successors, and assigns; and its joint ventures, subsidiaries, divisions, groups and affiliates controlled by it.

15. "Participate" in an entity or an arrangement means (1) to be a partner, joint venturer, shareholder, owner, member, or employee of such entity or arrangement, or (2) to provide services, agree to provide services, or offer to provide services through such entity or arrangement.  This definition applies to all tenses and forms of the word "participate," including but not limited to, "participating," participated," "participation," and "participant."

16. "Payer" means any Person that pays, or arranges for the payment, for all or any part of any physician services for itself or for any other Person, as well as any Person that develops, leases, or sells access to networks of physicians.

17. "Person" means any natural person or artificial person, including, but not limited to, any corporation, unincorporated entity, or government entity.  For the purpose of this Judgment, any corporation includes the subsidiaries, divisions, groups, and affiliates controlled by it.

18. "Physician" means a doctor of allopathic medicine ("M.D.") or a doctor of osteopathic medicine ("D.O.").

19. "Related Action" means the Federal Trade Commission's investigation of the acquisition by Renown Health of Reno Heart Physicians and its employment of most Reno Heart cardiologists, and subsequent action, *In the Matter of Renown Health*, pursuant to its administrative process against Renown Health resulting in an Order to Suspend Enforcement of Renown Non-Compete and a Decision and Order.

20. "Relating To" means pertaining in any way to, and is not limited to that which pertains exclusively to or primarily to.  This definition applies to all tenses and forms of the word "relate to," including but not limited to, "relates to," and "related to."

21. "Release Period" means the period of time beginning on the date the Federal Trade Commission's Decision and Order in the Related Action becomes final and ending thirty (30) days from the date the Federal Trade Commission's Decision and Order in the Related Action becomes final.

22. "Reno Cardiology Practice" means Cardiology Services offered in the Reno/Sparks Geographic Area by a cardiologist Participating in a medical practice or in an employment arrangement, excluding that of a Cardiologist Employee.

23. "Reno Heart Physicians" or "Reno Heart" means the professional corporation formerly known as Berndt, Chaney-Roberts, Davee, Ganchan, Ichino, Juneau, Noble, Seher, Smith, Swackhamer, Thompson, Williamson and Zebrack, Ltd. doing business as Reno Heart Physicians.

24. "Reno/Sparks Geographic Area" means the Reno/Sparks Metropolitan Statistical Area, as defined by the United States Office of Management and Budget, consisting of Washoe and Storey Counties.

25. "Renown Health" means Defendant Renown Health, its directors, officers, employees, agents, representatives, successors, and assigns; and its joint ventures, subsidiaries, divisions, groups and affiliates controlled by it, including but not limited to the Nevada Heart Institute and NHI-1, Inc., and the respective directors, officers, employees, agents, representatives, successors, and assigns of each.

26. "Renown Non-Compete Provisions" means, (1) with respect to the Share Purchase Agreement (i) Sections 10.5 as it relates to disclosing the identities of and communicating with patients treated by a Cardiologist Employee; and (ii) Section 10.7(a) as it relates to interfering with relationships between Renown Health and patients treated by a Cardiologist Employee; (iii) Sections 10.6, 10.7(b)-(d), 10.8, 10.9, 10.12, 10.15, and Exhibit A (Additional Breach Damages - Article 10) as such action under (i), (ii) or (iii) relates to a Cardiologist Employee Participating in a Reno Cardiology Practice pursuant to an Acceptable Termination; and (2) with respect to any Employment Agreement between Renown Health and any Cardiologist Employee, (i) Sections 7.5 and 11 as they relate to disclosing the identities of and communicating with patients treated by a Cardiologist Employee; (ii) Section 7.7(a) as it relates to interfering with relationships between Renown Health and patients treated by a Cardiologist Employee; (iii) Sections 7.6, 7.7(b)-(d), 7.8, 7.9, 7.12, 7.15, 10.4, and Exhibit C as such action under (i), (ii), or (iii) relates to a Cardiologist

Employee Participating in a Reno Cardiology Practice pursuant to an Acceptable Termination.

27. "Separation Agreement" and "Separation Agreements" mean any agreement Related To terms by which a Cardiologist Employee terminates his or her Contract Services. *Provided, however*, a Separation Agreement shall not include (1) any agreement between Renown Health and such Cardiologist Employee to Participate in a Reno Cardiology Practice for a period of at least a year; or (2) any agreement by Renown Health to provide support to such Cardiologist Employee to Participate in a Reno Cardiology Practice.

28. "Share Purchase Agreements" means any share purchase agreements entered into between Renown Health and SNCA, or any of SNCA's members, in or around December 2010, and any share purchase agreement entered into between Renown Health and Reno Heart Physicians, or any of its members, in or around March 2011.

29. "Suspension Period" means the period from the date the Federal Trade Commission's Order to Suspend Enforcement in the Related Action becomes final until the Termination Date.

30. "SNCA" means Sierra Nevada Cardiology Associates, the professional corporation formerly known as Arger, DiPaolo, Drummer, Fuller, Newmark & Spring doing business as Sierra Nevada Cardiology Associates.

31. "Termination Date" means the date on which the Federal Trade Commission's Decision and Order in the Related Action becomes final, or on the date Renown

Health receives notice from the Federal Trade Commission that a Decision and Order will not be issued in the Related Action.

32. "Termination Notification" means (1) written notification submitted to the Monitor by a Cardiologist Employee of that employee's intention to terminate his or her Employee Agreement and intention to Participate in a Reno Cardiology Practice for a period of at least one year after such termination, or (2) independent determination by the Monitor that a Cardiologist Employee intends to Participate in a Reno Cardiology Practice for a least one year after such termination.

## CARDIOLOGY SERVICES CONDUCT TERMS

33. Renown Health shall:

a. Not enforce any of the Renown Non-Compete Provisions against any Cardiologist Employee for any activity that Cardiologist Employee engaged in during the Suspension Period through the Release Period that Relates To providing Termination Notification; *provided, however*, that this Paragraph 33(a) does not prohibit Renown Health from enforcing any of the Renown Non-Compete Provisions against any Cardiologist Employee who terminates Contract Services prior to the Release Period;

b. For each Termination Notification that is (1) submitted during the Release Period and (2) received by Renown Health as an Acceptable Termination, terminate Contract Services of the Cardiologist Employee who submitted that Termination Notification, and allow that Cardiologist Employee to leave Renown Health's

employment on or before sixty (60) days of Renown Health's receipt of such
notification from the Monitor;

c.  For any activity Related To this Paragraph 33, waive all rights to seek or obtain
legal or equitable relief for breach of contract for violation by any Cardiologist
Employee of any of the Renown Non-Compete Provisions; and

d.  Not take any other action to discourage, impede, or otherwise prevent any
Cardiologist Employee from terminating Contract Services pursuant to this
Paragraph 33.

PROVIDED, HOWEVER, upon receipt by Plaintiff of Renown Health's Paragraph
52 verified report of Acceptable Termination by ten (10) Cardiologist Employees, the
Release Period shall end.  *Provided further* that, if during the Release Period there are
more than ten (10) Acceptable Terminations, the Monitor, after consultation with
Plaintiff, shall forward to Renown Health the first ten (10) such notifications received by
the Monitor and shall not reveal the identity of any of the additional Cardiologist
Employees who submitted Termination Notifications.

34. If after the expiration of the Release Period, Renown Health has not received
Acceptable Termination for at least six (6) Cardiologist Employees, then until receipt
by Plaintiff of Renown Health's Paragraph 52 verified report of Acceptable
Termination by six (6) Cardiologist Employees, Renown Health shall:

a.  Not enforce, directly or indirectly, the Renown Non-Compete Provisions against
any Cardiologist Employee seeking to provide Termination Notification;

b. Upon Acceptable Termination of any Cardiologist Employee, terminate Contract Services of each such Cardiologist Employee and allow that cardiologist to leave Renown Health's employment on or before ninety (90) days from the date such notification was received;

c. For any activity Related To this Paragraph 34, waive all rights to seek or obtain legal or equitable relief for breach of contract for violation by any Cardiologist Employee of any of the Renown Non-Compete Provisions; and

d. Not take any other action to discourage, impede, or otherwise prevent any Cardiologist Employee from terminating Contract Services pursuant to this Paragraph 34.

35. With respect to each Cardiologist Employee who terminates his or her Contract Services pursuant to Paragraphs 33 or 34 of this Judgment, Renown Health shall not:

a. Offer any incentive to such Cardiologist Employee to decline to provide Cardiology Services in a Reno Cardiology Practice;

b. Enforce any provision of such Cardiologist Employee's Employment Agreement that would prevent that cardiologist from informing patients treated by that cardiologist of his or her new Reno Cardiology Practice and providing Cardiology Services to those patients;

c. Enforce any of the Renown Non-Compete Provisions for any activity Relating To terminating Contract Services;

11 – Final Judgment

d.  Require any Cardiologist Employee, prior to terminating his or her Contract Services to enter into a Separation Agreement, including but not limited to any agreement to provide any payment to Renown Health;

e.  Prevent, impede, or otherwise interfere with the provision of Cardiology Services by such Cardiologist Employee; *provided however*, that nothing in this Paragraph 35(e) shall require Renown Health to include any cardiologist in Renown Health's emergency room call panel, in the provider network of any health plan, network, or provider organization or to compensate any cardiologist for providing professional services to Renown Health or to its patients or its contractors beyond any requirement contained in Paragraph 36;

f.  For a period of three (3) years from the date the Federal Trade Commission's Decision and Order in the Related Action becomes final deny, terminate or suspend medical staff privileges, or reduce or change medical staff membership status, of such Cardiologist Employee based solely on the status of that cardiologist's employment or lack of employment by Renown Health.  *Provided, however,* that Renown Health may deny, terminate or suspend a cardiologist's medical staff privileges, or reduce or change medical staff membership status, due to (a) quality or patient safety determinations; or (b) violations by the cardiologist of facility rules and regulations or standards of conduct that apply to all medical staff members; and

g.  For a period of two (2) years from the date such Cardiologist Employee terminates his or her Contract Services, directly or indirectly, solicit, induce, or

attempt to solicit or induce the employment of such Cardiologist Employee. *Provided, however*, that Renown Health may make general advertisements for cardiologists including, but not limited to, in newspapers, trade publications, websites, or other media not targeted specifically at the cardiologist who so terminated his or her employment or who was released from the Renown Non-Compete Provisions. *Provided further* that Renown Health may employ any cardiologist who applies to Participate with Renown Health, as long as such cardiologist was not solicited by Renown Health in violation of this Paragraph.

36. For a period of one (1) year from the date any Cardiologist Employee terminates Contract Services pursuant to Paragraphs 33 or 34, if that cardiologist's Employment Agreement with Renown Health contained any provisions for support in the event that termination of employment was required by a determination, order, or agreement with a governmental agency, Renown Health shall provide such support in accordance with the terms of the cardiologist's Employment Agreement if requested by the Cardiologist Employee; *provided, however*, that Renown Health shall not, whether or not it is so provided in the Employment Agreement, negotiate with any Payer on behalf of that cardiologist.

37. The purpose of Paragraphs 33 to 36 is to ensure that those Cardiologist Employees who terminate their Contract Services can offer Cardiology Services in a Reno Cardiology Practice in competition with Renown Health and to remedy the lessening of competition alleged in Plaintiff's Complaint.  To maximize efficiencies and ensure uniform standards and timelines, such Paragraphs are also intended to procedurally

and substantively conform with Paragraphs II to IV of the Federal Trade

Commission's Decision and Order in the Related Action.  Accordingly, to the extent

such Decision and Order does not become final, Paragraphs 33 to 36 (and related

Paragraphs 38 to 44) will automatically be deemed to no longer have an effect;

however, all other portions of this Judgment shall remain in effect.

## MONITOR TERMS

38. Judge Charles McGee shall be appointed Monitor to assure that Renown Health

expeditiously complies with all of its obligations and performs all of its responsibilities

as required by Paragraphs 33 to 36.

39. No later than one (1) day after issuance of a Decision and Order by the Federal

Trade Commission in the Related Action, Renown Health shall, pursuant to a

Monitor Agreement subject to Plaintiff's approval, transfer to the Monitor all the

rights, powers, and authorities necessary to permit the Monitor to perform its duties

and responsibilities in a manner consistent with the purposes of Paragraphs 33 to

36.

40. In the event a substitute Monitor is required, Plaintiff (in consultation with the Federal

Trade Commission) shall select the Monitor, subject to the consent of Renown

Health, which consent shall not be unreasonably withheld.  If Renown Health has not

opposed, in writing, including the reasons for opposing, the selection of a proposed

Monitor within ten (10) days after notice by Plaintiff to Renown Health of the identity

of any proposed Monitor, Renown Health shall be deemed to have consented to the

selection of the proposed Monitor.  Not later than ten (10) days after appointment of

a substitute Monitor, Renown Health shall execute an agreement that, subject to the prior approval of Plaintiff, confers on the Monitor all the rights and powers necessary to permit the Monitor to monitor Renown Health's compliance with the Paragraphs 33 to 36 in a manner consistent with the purposes of Paragraphs 33 to 36.

41. Renown Health shall consent to the following terms and conditions regarding the powers, duties, authorities, and responsibilities of the Monitor:

    a.  The Monitor shall have the power and authority to monitor Renown Health's compliance with the terms of Paragraphs 33 to 36, and shall exercise such power and authority and carry out the duties and responsibilities of the Monitor in a manner consistent with the purposes of Paragraphs 33 to 36 and in consultation with Plaintiff, including, but not limited to:

        i.  Receiving Termination Notifications from Cardiologist Employees;

        ii.  Notifying each Cardiologist Employee that submitted a Termination Notification whether or not such notification will be an Acceptable Termination;

        iii.  Forwarding such Acceptable Terminations to Renown Health pursuant to this Judgment; and

        iv.  Assuring that Renown Health expeditiously complies with all of its obligations and performs all of its responsibilities as required by Paragraphs 33 to 36.

    b.  The Monitor shall act in a fiduciary capacity for the benefit of Plaintiff.

    c.  The Monitor shall serve for such time as is necessary to monitor Renown Health's compliance with the Paragraphs 33, 34, 35(a) to (d), and 36.

d.  Subject to any demonstrated legally recognized privilege, the Monitor shall have full and complete access to Renown Health's personnel, books, documents, records kept in the ordinary course of business, facilities and technical information, and such other relevant information as the Monitor may reasonably request, Related To Renown Health's compliance with its obligations under Paragraphs 33 to 36.  Renown Health shall cooperate with any reasonable request of the Monitor and shall take no action to interfere with or impede the Monitor's ability to monitor Renown Health's compliance with Paragraphs 33 to 36.

e.  The Monitor shall serve, without bond or other security, at the expense of Renown Health on such reasonable and customary terms and conditions as Plaintiff may set.  The Monitor shall have authority to employ, at the expense of Renown Health, consultants, accountants, attorneys and other representatives and assistants as are reasonably necessary to carry out the Monitor's duties and responsibilities.  The Monitor shall account for all expenses incurred, including fees for services rendered, subject to the approval of Plaintiff.

f.  Renown Health shall indemnify the Monitor and hold the Monitor harmless against any losses, claims, damages, liabilities, or expenses arising out of, or in connection with, the performance of the Monitor's duties, including all reasonable fees of counsel and other reasonable expenses incurred in connection with the preparations for, or defense of, any claim, whether or not resulting in any liability, except to the extent that such losses, claims, damages, liabilities, or expenses

result from malfeasance, gross negligence, willful or wanton acts, or bad faith by the Monitor.

g. Renown Health shall report to the Monitor in accordance with the requirements of this Judgment and/or as otherwise provided in any agreement approved by Plaintiff.  The Monitor shall evaluate the reports submitted to the Monitor by Renown Health, and any reports submitted by a current or former Cardiologist Employee with respect to the performance of Renown Health's obligations under Paragraphs 33 to 36.

h. Within one (1) month from the date the Monitor is appointed pursuant to Paragraphs 38 to 44, and every sixty (60) days thereafter, until the later of: (i) one (1) year; or (ii) no fewer than six (6) Cardiologist Employees have terminated their Employment Agreements to provide Cardiology Services in the Reno/Sparks Geographic Area, and otherwise as requested by Plaintiff, the Monitor shall report in writing to Plaintiff concerning performance by Renown Health of its obligations under Paragraphs 33 to 36.

i. Renown Health may require the Monitor and each of the Monitor's consultants, accountants, attorneys, and other representatives and assistants to sign a customary confidentiality agreement; *provided, however*, that such agreement shall not restrict the Monitor from providing any information to Plaintiff.

42. Plaintiff may, among other things, require the Monitor and each of the Monitor's consultants, accountants, attorneys, and other representatives and assistants to sign

an appropriate confidentiality agreement Relating To Plaintiff materials and information received in connection with the performance of the Monitor's duties.

43. If Plaintiff determines that the Monitor has ceased to act or failed to act diligently, Plaintiff may appoint a substitute Monitor in the same manner as provided in Paragraphs 38 to 44.

44. Plaintiff may on its own initiative, or at the request of the Monitor, seek additional orders or directions from the Court as may be necessary or appropriate to assure compliance with the requirements of this Judgment.

## FUTURE TRANSACTIONS TERMS

45. Renown Health shall not, without prior notification to Plaintiff in the manner described in Paragraphs 46 to 48, directly or indirectly:

   a.  Acquire any assets of or financial interest in any group that provides Cardiology Services in the Reno/Sparks Geographic Area; or

   b.  Enter into any Contract Services with any group that provides Cardiology Services in the Reno/Sparks Geographic Area.

46. If a transaction subject to Paragraph 45 is subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Acts of 1975, as amended, 15 U.S.C. § 18a (the "HSR Act"), the notification shall be in the form required by the HSR Act; furthermore, Renown Health agrees to waive the confidentiality protections under the HSR Act, 15 U.S.C. § 18a(h), the Antitrust Civil Process Act, 15 U.S.C. §§ 1311 *et. seq*. and any other applicable confidentiality provisions, for the purpose of permitting Plaintiff to share documents, information,

18 – Final Judgment

and analysis with the United States Department of Justice Antitrust Division or Federal Trade Commission.

47. If a transaction subject to Paragraph 45 is not subject to the reporting and waiting period requirements of the HSR Act, notice shall contain (i) either a detailed term sheet for the proposed acquisition or the proposed agreement with all attachments, and (ii) documents that would be responsive to Item 4(c) and Item 4(d) of the Premerger Notification and Report Form under the HSR Act, and Rules, 16 C.F.R. § 801-803, Relating To the proposed transaction.

48. Notification pursuant to Paragraphs 45 to 47 shall be provided at least thirty (30) days prior to consummating the proposed transaction via overnight express delivery to the following address: State of Nevada, Office of the Attorney General; Bureau of Consumer Protection; Attention: Antitrust Unit; 100 North Carson Street; Carson City, Nevada 89701.  If within the thirty (30) day period after notification, Plaintiff makes a written request for additional information, Renown Health shall not consummate the proposed transaction until thirty (30) days after submitting such additional information or documentary material.  Early termination of the waiting periods in this Paragraph may be requested, and where appropriate, granted by letter from Plaintiff.

49. Renown Health shall notify Plaintiff at least thirty (30) days prior to:

   a.  Any proposed dissolution of Renown Health;

   b.  Any proposed acquisition, merger or consolidation of Renown Health; or

c.  Any other change in Renown Health, including but not limited to, assignment and the creation or dissolution of subsidiaries, if such change might affect compliance obligations arising out of this Judgment.

## ATTORNEYS FEES AND COSTS TERMS

50. Renown Health shall reimburse to Plaintiff all reasonable attorney fees and costs incurred by Plaintiff Relating To its investigation of Renown Health resulting in this Judgment.  The total reimbursement to Plaintiff for attorney fees and costs incurred up to and including entry of this Judgment shall be $550,000.00, with reimbursement occurring within forty (40) days of entry of this Judgment.

51. Renown Health shall reimburse to Plaintiff all reasonable attorney fees and costs incurred by Plaintiff after entry of this Judgment Relating To monitoring and ensuring compliance with Paragraphs 33 to 36.  The rate for such attorney fees shall be $400 per hour and the rate for paralegals shall be $100 per hour, but shall not exceed in total $50,000. Reimbursements shall be made within forty (40) days of a request for reimbursement in writing, which shall include the following information: (a) identification of all Persons employed by, or contracting with, Plaintiff by name and job title; (b) total number of hours worked per Person for which Plaintiff seeks reimbursement for work in whole or in part; (c) a summary description of each Person's work, and (d) the hourly rate applied to each Person's work.

## COMPLIANCE AND ENFORCEMENT TERMS

52. No later than thirty (30) days after the date the Federal Trade Commission's Decision and Order in the Related Action becomes final, and every thirty (30) days

thereafter until Renown Health has fully complied, as relevant, with Paragraphs 33 and 34, Renown Health shall submit to Plaintiff a verified confidential written report setting forth in detail the manner and form in which it intends to comply, is complying, and has complied with Paragraphs 33 to 36. Renown Health shall submit at the same time a copy of these reports to the Monitor.  For the period covered by these reports, the reports shall:

a. Provide sufficient information and documentation to enable Plaintiff to determine independently whether Renown Health is in compliance with Paragraphs 33 to 36; and

b. Be verified by a notarized signature or sworn statement, or be self-verified in the manner set form in 28 U.S.C. § 1746.

53. Renown Health shall design, maintain, and operate an Antitrust Compliance Program to comply with this Judgment and the Antitrust Laws.  This program, which does not create a safe harbor or mitigation defense for any possible Judgment non-compliance, shall include, but not be limited to:

a. Within ten (10) days of entry of this Judgment, Renown Health's appointment of a compliance officer (and a successor within thirty (30) days of a predecessor vacating the appointment) who is in charge of designing, maintaining, and operating this program;

b. Within thirty (30) days of entry of this Judgment, distribution of written materials on the meaning and requirements of this Judgment and the Antitrust Laws to Renown Health's Executive and Cardiology Staff;

c.  Within ninety (90) days of entry of this Judgment, In-Person Training on the meaning and requirements of this Judgment and the Antitrust Laws for Renown Health's Executive and Cardiology Staff;

d.  Annually no later than thirty (30) days after the anniversary date of entry of this Judgment, In-Person Training on the meaning and requirements of the Antitrust Laws; and

e.  Processes that ensure Renown Health's Executive and Cardiology Staff have ongoing access to written materials on the meaning and requirements of this Judgment and the Antitrust Laws, and that related questions can be answered by legal advisors as the need arises.

54. Within one hundred (100) days after entry of this Judgment, Renown Health shall submit to Plaintiff a verified confidential written report setting forth in detail the manner and form in which Renown Health intends to comply, is complying, and has complied with Paragraph 53.  For the period covered by this report, the report shall include, but not be limited to:

a.  The name, title, business address, email address, and business phone number of the compliance officer appointed by Renown Health to design, maintain, and operate an Antitrust Compliance Program;

b.  The name, title, and business address (including identification of any Renown Health affiliate) of each Person to whom Renown Health distributed a copy of the Antitrust Compliance Program's written materials pursuant to Paragraph 53(b), and the date and manner of distribution to each;

c.  The name, title, and business address (including identification of any Renown Health affiliate) of each Person who received In-Person Training on the meaning and requirements of this Judgment and the Antitrust Laws pursuant to Paragraph 53(c); the date and location at which each Person was trained; the name, title, and business address of the Person who conducted the training; and a description in reasonable detail of the In-Person Training;

d.  Provide sufficient information and documentation to enable Plaintiff to determine independently whether Renown Health is in compliance with Paragraph 53; and

e.  Be verified by a notarized signature or sworn statement, or be self-verified in the manner set form in 28 U.S.C. § 1746.

55. Annually within sixty (60) days after the anniversary date of entry of this Judgment, Renown Health shall submit to Plaintiff a verified confidential written report setting forth in detail the manner and form in which Renown Health intends to comply, is complying, and has complied with this Judgment.  For the period covered by these reports, the reports shall include, but not be limited to:

a.  The name, title, business address, email address, and business phone number of the compliance officer appointed by Renown Health to design, maintain, and operate an Antitrust Compliance Program;

b.  The name, title, and business address (including identification of any Renown Health affiliate) of each Person who received In-Person Training on the meaning and requirements of the Antitrust Laws pursuant to Paragraph 53(c); the date and location at which each Person was trained; the name, title, and business

address of the Person who conducted the training; and a description in
reasonable detail of the In-Person Training;

c. Provide sufficient information and documentation to enable Plaintiff to determine
independently whether Renown Health is in compliance with this Judgment; and

d. Be verified by a notarized signature or sworn statement, or be self-verified in the
manner set form in 28 U.S.C. § 1746.

56. For purposes of determining or securing compliance with this Judgment, and subject
to any legally recognized privilege, Plaintiff may issue an Investigative Demand
pursuant to NRS 598A.100.  Renown Health shall timely and fully comply with any
such Investigative Demands. Furthermore, and subject to any legally recognized
privilege, and upon written request and with reasonable notice to Renown Health,
Renown Health shall permit any duly authorized representative of Plaintiff:

a. Access, during business office hours of Renown Health and in the presence of
counsel, to all facilities and access to inspect and copy all books, ledgers,
accounts, correspondence, memoranda and all other records and documents in
the possession or under the control of Renown Health Related To compliance
with this Judgment, which copying services shall be provided by Renown Health
at the request of the authorized representative(s) of Plaintiff and at the expense
of Renown Health; and

b. Upon five (5) days' notice to Renown Health and without restraint or interference
from Renown Health, to interview, either informally or on the record, officers,

directors, or employees of Renown Health, who may have their individual counsel present, regarding such matters.

57. No information or documents obtained pursuant to Paragraphs 52 to 56 or as otherwise required by this Judgment and which have been designated in good faith as "Confidential" by Renown Health, shall be divulged by Plaintiff to any Person other than the authorized representatives of Plaintiff, and their consultants, except in the course of legal proceedings for the purpose of securing compliance with this Judgment (including disclosure of documents at interviews on the record), to the United States Department of Justice Antitrust Division or Federal Trade Commission, or as otherwise required by law.

58. If at the time information or documents are furnished by Renown Health to Plaintiff, Renown Health represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Renown Health marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then Plaintiff shall give Renown Health ten (10) calendar days' notice prior to divulging such material in any legal proceeding.

59. It shall be a violation of this Judgment if Renown Health fails to abide by any term of this Judgment.  For any violation(s) of this Judgment committed by Renown Health, Plaintiff may seek one or more of the following remedies:

a. Payment of penalties in the amount of $10,000 for each violation of this Judgment. Each separate violation of this Judgment shall be a separate offense, except that in a case of a violation through continuing failure to obey or neglect to obey the Judgment, each day of continuance of such failure or neglect shall be deemed a separate offense. A series of underlying acts shall not constitute a single violation;

b. Equitable and injunctive relief, including, but not limited to, disgorgement of profits and restitution to the extent applicable;

c. A civil contempt of court order from the Court and all remedies provided by law for such order; and

d. Any other relief that the Court deems appropriate.

60. Renown Health shall pay to Plaintiff its reasonable attorney fees and costs incurred if Plaintiff is the prevailing party in a contested action to interpret, modify or enforce this Judgment.

61. All monetary awards paid pursuant to Paragraphs 59 to 60 or a resolution of such shall be deposited by Plaintiff in compliance with NRS 598A.260.

## GENERAL TERMS

62. Unless this Court grants an extension, this Judgment shall terminate 5 years from the date of entry; however, that this Judgment may remain in effect after completion of such 5 year period solely for the purpose of determining or enforcing compliance during its 5 year effective period.

63. This Court retains jurisdiction to enable either Party to this Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

64. If any part of this Judgment is hereafter adjudged by this Court to be unenforceable, the remaining provisions of this Judgment shall stay in full force and effect.

**APPROVAL AND ORDER**

This Judgment is approved and hereby entered pursuant to 15 U.S.C. § 26 and NRS 598A.070 and .090.  This lawsuit, in all other respects, is hereby dismissed with respect to Defendant Renown Health.

IT IS SO ORDERED:

DATED this 10th day of August, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE